PETTY *v.* BAY CITY BANK.

1. CONTRACTS — TWO WRITINGS REFERRING TO SAME SUBJECT-MATTER CONSTRUED TOGETHER.

Where a guaranty agreement was executed, and later another agreement expressly referring thereto was executed, both agreements relating to the same subject-matter and being delivered at the same time, they are parts of a single transaction and should be construed together.

2. BANKS AND BANKING—INSOLVENCY—DUTY OF STOCKHOLDERS OF INSOLVENT BANK TO PAY DEPOSITORS.

Where a bank became insolvent and closed its doors, the depositors were entitled to an immediate payment of their money; and when it was shown that the assets were insufficient to pay them, it became the duty of the stockholders to pay in the necessary amount not exceeding the par value of the stock, to meet the demand.

3. SAME—DIRECTORS AUTHORIZED TO LEVY ASSESSMENT ON STOCKHOLDERS OF INSOLVENT BANK TO PAY DEPOSITORS.

Under 2 Comp. Laws 1915, § 8015, the directors of an insolvent bank may levy an assessment on the stockholders to the amount of their individual holdings at the par value of the stock, if necessary, to pay the depositors.

4. GUARANTY—BANKS AND BANKING—LIABILITY OF STOCKHOLDERS ON CONTRACT OF GUARANTY.

Where stockholders of an insolvent bank, in writing, guaranteed a bank taking over the assets and assuming the liabilities that $75,000 would be raised by an assessment on the stockholders, they are liable thereunder, although no such assessment was ever made; and it is immaterial that said guaranty was made in anticipation by them that the assessment would be levied by the State banking commissioner, and that they had the erroneous impression that they, as directors of the insolvent bank, had no authority to make the levy.

5. PLEDGES — ON NONPERFORMANCE OF CONTRACT PLEDGED COLLATERAL MAY BE SOLD BY PLEDGEE.

Collateral pledged to secure the faithful performance of

a contract may be sold by the pledgee, where it is admitted that the contract has not been performed within the time stipulated.

Appeal from Bay; McPeek (Russell R.), J., presiding. Submitted April 19, 1928. (Docket No. 50, Calendar No. 33,608.) Decided July 24, 1928.

Bill by John R. Petty and others against the Bay City Bank to enjoin the sale of certain stock pledged as collateral security. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Collins & Thompson,* for plaintiffs.

*James E. Duffy* and *James E. Duffy, Jr.,* for defendant.

McDONALD, J. The plaintiffs were stockholders of the Farmers State Savings Bank of Bay City, Michigan. On January 31, 1927, by order of the banking commissioner, the bank ceased to do business. An investigation by the State banking department had disclosed that its capital was impaired to the extent of $100,000. It was necessary that its affairs be liquidated and a 100% assessment be made against the stockholders for payment of depositors. The board of directors, which included most of the plaintiffs, persuaded the defendant bank to take over the assets of their bank and to liquidate its affairs. In furtherance of this purpose, an agreement of sale was entered into between the Farmers State Savings Bank designated therein as the seller and the defendant bank as the purchaser. This agreement was in part as follows:

"In addition to the cash items set forth in the attached balance sheet, there shall be paid to the purchaser by the seller the sum of at least seventy-five thousand dollars ($75,000). This amount, it is understood by the purchaser, is to be realized from an

assessment of one hundred (100) per cent. to be made upon the stockholders of the seller. To guarantee the collection of such assessment and the payment by the seller to the purchaser of at least the sum of seventy-five thousand ($75,000) dollars thereof, within five (5) months from the date thereof, certain individuals acceptable to the purchaser are to enter into an individual agreement and to deposit collateral acceptable to the purchaser."

The guaranty referred to was executed by the plaintiffs and contains the following obligation:

"Now, therefore, in consideration of the premises, and for the purpose of assuring said first party of the collection of at least 75 per cent. of said assessment, the said second parties do hereby guarantee the collection of at least $75,000 on said assessment within 90 days from the date hereof; and in the event of the failure to collect said assessment to the amount of $75,000 within said period of 90 days, then and in that event the said second parties shall become liable to pay forthwith to said first party the difference between the amount actually collected on said assessment and $75,000, and on making such payment said second parties shall be subrogated to the rights of said first party or any other person or corporation having the right to collect such assessments, and collections made thereon after said 90 days shall belong to said second parties up until the amount of $75,000 is collected, to reimburse them for the amounts paid under this guarantee. * * *

"In case of the collection from the stockholders of said Farmers State Savings Bank on the assessment aforesaid, of $75,000 or more, or if such collections are less than $75,000, and said second parties make good the deficiencies to the first party, then this obligation, so far as it affects said first party, shall be void and of no effect."

To secure the faithful performance of their obligations under this guaranty, the plaintiffs deposited with defendant certain collateral which in the agreement was credited to them individually by name. No assessment was levied or attempted to be levied upon the

stockholders as contemplated by the parties and nothing in lieu thereof has been paid in by the plaintiffs. The defendant was about to sell the pledged collateral. The plaintiffs filed this bill to restrain such action and to compel a return of the collateral and a cancellation of the agreement of guaranty.

The theory of the bill is that the plaintiffs believed an assessment would be levied by the State banking department; that it would be a legal assessment binding on all of the stockholders; that if such an assessment were made they estimated at least $75,000 would be paid thereon; and that in signing the guaranty they believed they were assuming liability for the payment of that amount only if the assessment were made by the banking commission. It is alleged,

"That the board of directors had no authority to levy an assessment under the facts existing, and that therefore it took no action, and that no legal assessment was made or could be made by said board under the law."

It is further alleged,

"That by reason of the fact that no assessment has been made, and that no assessment can be made upon the stockholders of said bank under the conditions existing, they are released from liability to said Bay City Bank, under the writing aforesaid, and that they are entitled respectively to the return of the collateral put up with said agreement and now in the hands of the Bay City Bank."

On the hearing, the circuit judge dismissed the bill. From the decree entered the plaintiffs have appealed.

There is involved, first, a construction of the guaranty agreement, and, second, whether under the existing facts a legal assessment could be made against the stockholders. The guaranty agreement is dated January 31, 1927. It was not made in anticipation of an agreement with the defendant for the liquidation of the affairs of the bank. At that time negotiations

were being carried on with other banks. When these failed they sought to interest the defendant. An agreement was finally reached. It was reduced to writing and is dated February 8, 1927. While the two agreements are of different dates, they relate to the same subject-matter, are between the same parties, were delivered to the defendant at the same time and are parts of a single transaction. The so-called agreement of sale expressly refers to the guaranty agreement. In these circumstances, the two instruments should be considered together in determining the obligations of the plaintiffs. The purpose of both agreements was the liquidation of the Farmers State Savings Bank of Bay City. The matter of chief concern was the assessment to be made on the stockholders. Both agreements refer to it. It was agreed that an assessment was necessary and would be made. That was the principal condition on which the defendant agreed to take charge of the liquidation. Without it there would be a definite loss of at least $100,000 to any bank that took over the assets and business for liquidation. . All of the parties so understood the situation. The agreement of sale provided that the Farmers State Savings Bank should pay to the defendant at least $75,000 to be realized from an assessment on the stockholders. To guarantee the collection and payment of this amount to the defendant, the plaintiffs were to enter into an "individual agreement and to deposit collateral acceptable to the purchaser." The plaintiffs ratified this agreement in a meeting of the stockholders subsequently held, so they had full knowledge that an assessment was to be made and collected by their bank and $75,000 thereof paid to the defendant. Reading the two contracts together, it is clear that the plaintiffs intended to guarantee the performance of the conditions relative to the assessment embodied in the

contract of sale.    They guaranteed that an assessment
against the stockholders would be collected and at least
$75,000 paid to the defendant within 90 days.    It
is not claimed that the defendant was to make the
assessment and it is immaterial that the plaintiffs and
their board of directors believed that it would be levied
by the banking commissioner.    It was their obligation
to see that it was made, to see that the money was
collected and paid to the defendant.    They were
guarantors of collection and payment.    Equity will
hold them to their contract unless they have been
released as they claim by legal impossibility of
performance.

Could a legal assessment have been made?    The
statute authorizing assessments against the stock-
holders of a bank in the process of liquidation is section
8015, 2 Comp. Laws 1915.    It reads as follows:

"The stockholders of every bank shall be individually
liable, equally and ratably, and not one for another,
for the benefit of the depositors in said bank to the
amount of their stock at the par value thereof, in
addition to the said stock.    *    *    *    Such liability
may be enforced in a suit at law or in equity by any
such bank in process of liquidation or by any receiver
or other officer succeeding to the legal rights of said
bank."

On January 31, 1927, and for some time prior
thereto, the Farmers State Savings Bank of Bay City
was insolvent.    After it closed its doors on that
date, it was in process of liquidation.    There were
not sufficient assets to pay the depositors.    The stock-
holders were immediately liable for the deficiency.

"When the bank became insolvent and closed its
doors, the depositors were entitled to an immediate
payment of their money; and when it was shown that
the assets were insufficient to pay them, it became the
duty of the stockholders to pay in the necessary amount
not exceeding the par value of the stock, to meet the

demand." *Foster* v. *Row,* 120 Mich. 1, 8 (77 Am. St. Rep. 565).

As we understand the contention of the plaintiffs, it is that the stockholders were released because the defendant bank assumed their obligation to the depositors.    This contention overlooks the fact that the defendant assumed this obligation on condition that the deficit in the assets be made up by an assessment on the stockholders.    The stockholders knew of this condition.    They had full knowledge of the agreement and ratified it at a meeting held on February 17, 1927. In the resolution of approval which was adopted by a great majority of the stockholders, including the plaintiffs, it was said:

"Whereas, in the judgment of the stockholders of this bank it is essential for the safety and protection of the depositors of this bank that said agreement be approved," etc.

The agreement provided for an assessment.    By ratifying it, they agreed to produce $100,000 which was to be collected by their board of directors and paid to the defendant.    In view of these facts, there is no merit in the contention that they are released from liability for an assessment.    The facts as presented by this record and the statute applicable thereto leave no doubt that if the board of directors of the Farmers State Savings Bank had levied the assessment as it was understood it would do, such assessment would have been legal and binding on the stockholders.    The question in this case is whether the defendant may sell the collateral.    It may do so because it was pledged to secure the faithful performance of a contract which admittedly has not been performed.

The decree of the circuit court is affirmed, with costs to the defendant.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, and SHARPE, JJ., concurred.    POTTER, J., did not sit.